**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHAWNICE STEVENS** ) | |
| **279 Newcomb St. SE** ) | |
| **Washington, D.C. 20032** ) | |
| ) | **Case No.:  1:23-cv-139** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ANTONY J. BLINKEN** ) | |
| **SECRETARY OF STATE** ) | |
| **U.S. Department of State** ) | |
| **2201 C St., NW** ) | |
| **Washington, DC 20520** ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| *Defendant.* ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **U.S. DEPARTMENT OF STATE** ) | |
| **The Executive Office** ) | |
| **Office of the Legal Adviser, SA-17** ) | |
| **600 19th Street, NW, Suite 5.600** ) | |
| **Washington DC 20522** ) | |
| _____ ) | |

<u>**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**</u>

COMES NOW, Shawnice Stevens, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendant, Antony J. Blinken, Secretary of State of the U.S. Department of State, (hereinafter "Defendant") and in support thereof states as follows:

<u>**INTRODUCTION**</u>

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII") and the Fair Labor Standards Act (FLSA) for the Defendant's unlawful harassment, discrimination based on race (African American)

and age discrimination, hostile work environment, and retaliation against the Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for her statutorily-protected activity.

## JURISDICTION AND VENUE

2. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq., to redress and enjoin employment practices of the Defendant.

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Washington, D.C.

5. Additionally, venue is proper in the District of Columbia Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District of Columbia.

## EXHAUSTION OF REMEDIES

6. Plaintiff has exhausted all of her administrative remedies.

7. Plaintiff filed her initial EEO complaint in October 2018, followed by a formal EEO complaint in December 2018, alleging race (African American) and age discrimination, hostile work environment, and retaliation. Plaintiff then requested a hearing through the federal Equal Employment Opportunity Commission ("EEOC"). On April 9, 2019, Plaintiff additionally submitted a complaint to the Department of Labor Office of Federal Contract Compliance Programs.

8. On October 20, 2022, the EEOC issued a Final Order and Right-to-Sue Letter.

9. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## **NATURE OF THE ACTION**

10. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

12. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## **PARTIES**

13. Plaintiff, Shawnice Stevens, is an African American female who resides in Washington, D.C.

14. Defendant Antony J. Blinken is the Secretary of State for the United States Department of State, or State Department, which is an executive department of the U.S. federal government responsible for the country's foreign policy and relations. Plaintiff brings suit against Mr. Blinken in his official capacity as Secretary of State on behalf of the U.S. Department of State.

15. Ms. Stevens worked as a government contractor for Defendant from 2015 until her termination on November 15, 2018.

16. During the relevant period, Defendant employed Plaintiff, Ms. Stevens.

17. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII and the Fair Labor Standards Act ("FLSA"). Defendant served as a joint employer to Plaintiff, along with contractor Muscogee International, LLC (hereinafter "Muscogee"). As set forth by this Court in *Al-Kharouf v. District of Columbia*, 498 F. Supp. 3d 79, 81–82 (D.D.C. 2020):

> The D.C. Circuit has "recognized two largely overlapping articulations of the test for identifying joint-employer status." *Al-Saffy v. Vilsack*, 827 F.3d 85, 96, 423 U.S. App. D.C. 443 (D.C. Cir. 2016). The "Spirides test"— based on *Spirides v. Reinhardt*, 613 F.2d 826, 198 U.S. App. D.C. 93 (D.C. Cir. 1979)—considers the "economic realities of the work relationship" and "calls for application of general principles of the law of agency to undisputed or established facts." *Id.* at 831 (cleaned up). If there is the "right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Id.* at 831-32.

> The other test arises from *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117 (3d Cir. 1982). As with the Spirides test, this "*Browning-Ferris test*" considers whether the employer, "while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 1123.

> For both tests, "the touchstone is control." *Al-Saffy*, 827 F.3d at 97. The *Spirides* test establishes various factors for courts to consider, but the "extent of the employer's right to control the means and manner of the worker's performance is the most important factor to review." 613 F.2d at 831 (cleaned up).

Here, the facts clearly demonstrate that Plaintiff was an employee of Defendant. She reported to supervisors who were employed by Defendant, who had the right to control the means and manner of Plaintiff's performance. Though she reported her time to Muscogee,

the nature of her work was dictated by Defendant and Defendant's agents. Plaintiff's eventual termination itself was allegedly predicated upon Defendant's assessment of her performance, as demonstrated by the facts below. Additionally, when Plaintiff's engagement as a subcontractor shifted from contractor OBTEX to Muscogee in 2017, the nature of her duties, obligations, and reporting to supervisors was unaffected, further demonstrating that Defendant had an established employer-employee relationship with Plaintiff.

## **FACTUAL ALLEGATIONS**

18. Plaintiff Shawnice Stevens was employed as a government contractor with joint employer Muscogee International, LLC for the Department of State, Overseas Buildings Operations (OBO), Human Resources (HR) Division beginning 2015, and never had any negative complaints about her work prior to the incidents underlying this Complaint.

19. Plaintiff was a subcontractor for Defendant, and her initial contract was with OBTEX. In December 2017, she was picked up by Muscogee International, LLC, which was awarded the OBO/RM/EX/HR contract. Her duties and responsibilities were controlled by her direct supervisor, HR Branch Chief Ms. Alicia Davis-Waters, and did not change with the change in contractor.

20. In December 2017, the OBO Human Resources contract with Muscogee International, LLC provided OBO HR with a Human Resources Program Coordinator position, which was signed by Plaintiff's direct government manager, Ms. Davis-Waters, an African-American female.

21. In January 2018, a contract modification was completed at the Direction of the Executive Director ("EX") Cynthia Saboe, who is a Caucasian female. It was brought to EX Director

Cynthia Saboe's attention that because the Human Resources Branch Chief Alicia Davis-Waters' COR certification was expired, a new COR needed to be appointed to the contract.

22.  At this time, Ms. Davis-Waters recommended that another HR Manager, Adrian Partlow, who had a valid COR certificate, be named as the temporary COR until Ms. Davis-Waters' COR certifications were renewed.

23. Instead, Ms. Saboe insisted that her Budget Analyst Sara Bailey (Caucasian, female) be appointed as the COR on the HR contract. As the Human Resources Program Coordinator, Plaintiff was made aware of the tentative temporary Human Resources contract COR modification change, as she would previously directly report to the government manager HR Branch Chief Ms. Davis-Waters for her duties, responsibilities, time and attendance.

24. As the new temporary COR, Ms. Bailey never met with Plaintiff to discuss the contract COR change, duties, responsibilities, or her expectations. Accordingly, Ms. Stevens continued to work as usual per her original work plan.

25. Plaintiff later learned that in July 2018, Ms. Bailey had communicated issues about Ms. Stevens to her joint employer Muscogee International, LLC. However, Plaintiff was never made aware that there were any issues at that time, nor was she advised that there were any alleged problems with her performance.

26. On Friday, August 3, 2018, Ms. Bailey sent an email at or around 4:03p.m. to Plaintiff and another colleague, Sherii Alexander (African-American, female) requesting an OBO Broadcast Notice be sent out to the OBO Division. The email was sent at the end of the work day, and did not specifically state that Plaintiff should personally complete the Broadcast Notice. The task was not completed that day.

27. On Monday, August 6, 2018, Ms. Alexander completed the task. Ms. Saboe and Ms. Bailey received an email from Ms. Alexander stating that the OBO Broadcast Notice was submitted and scheduled for release. Ms. Saboe acknowledged the email and responded, "Thank You, Sherii!".

28. On August 16, 2018, Plaintiff was contacted without prior notice to have a meeting with her contracting agency Muscogee International, LLC's Program Manager ("PM") Kameron Turner (Caucasian, male). Plaintiff assumed the meeting was a routine check-in, so she arranged to use the HR conference room and informed the HR receptionist of the name of her visitor. The meeting was scheduled for 11:00 a.m. About 10 minutes later, PM Kameron Turner came to the HR office asking for Ms. Bailey. Ms. Bailey then approached Plaintiff's desk, informing her that PM Kameron Turner was in the HR officer ready to meet with her.

29. Plaintiff walked to the conference room she had reserved for her meeting, but Ms. Bailey informed her that the meeting was switched from the reserved conference room to Ms. Saboe's office. Ms. Saboe and Ms. Bailey were not present for the meeting.

30. Plaintiff then learned that the meeting had been initiated because Ms. Bailey had accused Plaintiff of not completing the duties assigned to her, based upon the August 3, 2018 email.

31. During the meeting, Plaintiff also learned that Ms. Bailey had been communicating with Contracting Officer (CO) Celenne Cook (Caucasian, female) and Muscogee International, LLC behind her back. PM Kameron Turner and another Muscogee representative notified Plaintiff that Ms. Bailey had contacted the company to complain that she was not in compliance due to her not completing a task, which was not true.

32. Branch Chief Ms. Davis-Waters was not present in the meeting, and she had not been previously made aware of any issues with the contract. Since the alleged incident had taken place on August 3, 2018, two and a half weeks prior, Plaintiff informed PM Kameron Turner that she was not aware of the allegation against her and the task in question, however she would conduct research and provide feedback. Mr. Turner then told Plaintiff that she needed to start reporting her time and attendance to the Muscogee International, LLC. Plaintiff requested that the requirement be provided in writing, and informed Mr. Turner that when Muscogee International, LLC was awarded the Department of State contract in January 2018, reporting time and attendance was not a requirement of the company, although she already reported her time and attendance Ms. Davis-Waters because it is an HR request for all HR employees.

33. Per Muscogee's request, Plaintiff began reporting her attendance. Following the meeting with Muscogee International, LLC, Plaintiff immediately went to her supervisor Ms. Davis-Waters, and informed her of the meeting while asking her if there were any issues with the contract and/or her performance. Ms. Davis-Waters assured Plaintiff that she had no issues with the contract and that her performance was excellent. Ms. Davis-Waters also informed Plaintiff that she was unaware of the allegations and that she would get to the bottom of the issue.

34. Ms. Davis-Waters contacted Ms. Saboe, CO Officer Celenne Cook, and Ms. Bailey via email to inquire about what had been reported. As the Contracting Office Representative (COR), Ms. Bailey's responsibility is to handle the logistics of the Muscogee contract. She did not have direct contact or communications with Plaintiff, as Plaintiff was part of the HR Team and Ms. Bailey was part of the EX Director Team. In addition to contract

logistics, Ms. Bailey's responsibility is to also address contract discrepancies with Ms. Davis-Waters and Muscogee.

35. The day after meeting with Muscogee, Plaintiff conducted additional research and discovered that her colleague Ms. Alexander had completed the Broadcast Notice the business day after it had been assigned. With this discovery, Ms. Stevens corresponded with Mr. Turner via email on Monday, August 20, 2018, proving evidence that the allegations against her were in fact false and that the OBO Broadcast Notice in question was completed by her colleague. However, Muscogee didn't acknowledge Plaintiff's email until the next work week, stating on Monday, August 27, 2018, "this was the event that was in question."

36. Plaintiff responded on Tuesday, August 28, 2018, asking what Muscogee's protocol was for false complaints or allegations against employees. Muscogee did not provide an answer or solution to the false allegations.

37. When initially asked to provided her daily work schedule at the request of the Muscogee, Plaintiff complied. Upon reading her contract and task order, and subsequent conversations with Muscogee, Plaintiff stopped sending reporting emails. The HR contract did not require Plaintiff to report her attendance to Muscogee. However, during a conference call with Muscogee in which they repeatedly referred to Plaintiff by another employee's name, she once again asked for the attendance request to be provided to her in writing, which she never received.

38. In addition to asking for the request be provided in writing multiple times, Plaintiff informed Muscogee COO Tyrone Taylor, Program Manager Kameron Turner, and HR Repesentative Karrie Franklin that her attendance, duties, and responsibilities were

reported to Ms. Davis-Waters daily. As the Government Manager for the HR contract, Ms. Davis-Waters signed and approved Plaintiff's timesheets sent to Muscogee.

39. Immediately after Plaintiff's meeting on August 16, 2018 with Muscogee and Ms. Davis-Waters' emails with the EX Director, Contracting Officer, and the COR, Plaintiff noticed a change in her work environment. Ms. Bailey had been friendly with Plaintiff before being name the COR on the contract, as had been Ms. Saboe. Previously, Plaintiff worked closely with Ms. Saboe. Ms. Saboe would come to Plaintiff's desk to ask how she was doing, while discussing various project statuses, project findings, and giving her tasks to complete. Plaintiff developed and managed the OBO HR IT database, and Ms. Saboe would ask questions about the new and exciting IT systems.

40. Since providing evidence that the allegations by Ms. Bailey against her were false, Ms. Saboe and Ms. Bailey ceased all communications with Plaintiff. Plaintiff stood up for herself against Ms. Bailey, who is an older Caucasian female, and showed that the accusations Ms. Bailey made against her were false.

41. Subsequently, Ms. Bailey's biases against Plaintiff as a young African-American woman became more apparent. It was clear that Ms. Bailey took issue with Plaintiff challenging her. Because of Ms. Saboe and Ms. Bailey's relationship and camaraderie, Ms. Saboe's treatment of Plaintiff noticeably changed as well. Ms. Saboe began filtering some of Plaintiff's work to other employees. When Plaintiff sent emails to Ms. Saboe, Ms. Saboe responded but only in a minimal way. Ms. Saboe would no longer speak to Plaintiff or make direct eye contact in passing.

42. It was brought to Plaintiff's attention that Ms. Davis-Waters, Ms. Saboe, Ms. Bailey, and Ms. Cook had a meeting to address the false allegations against Plaintiff, along with

additional concerns with the Muscogee International, LLC contract. During this meeting, the EX Director, COR, and CO Officer attempted to have Plaintiff terminated due to the allegations.

43. As a result of the meeting, Ms. Davis-Waters informed all parties involved in the meeting of their wrongdoings and assured them that Plaintiff had provided excellent service to OBO HR since 2015, and that if it weren't for Plaintiff's dedication and commitment to the HR office, many of the assigned needed tasks and projects would not have been completed. Therefore, because they did not communicate with her and provide additional valid reasons as to why Plaintiff should be terminated, and as the Muscogee contract was assigned to HR and Ms. Davis-Waters was the Government Manger, Plaintiff could not be terminated.

44. Following the meeting with Ms. Davis-Waters, Ms. Bailey's discrimination and harassment of Plaintiff increased. Ms. Bailey sat at the front of the HR office, whereas Plaintiff sat in the very back of the office. Ms. Bailey began routinely walking around questioning Plaintiff's colleagues about her time, attendance, duties, and responsibilities, though at that time Ms. Bailey still had no direct communications with Ms. Davis-Waters or Plaintiff.

45. Ms. Bailey never had a meeting to discuss the contract COR change, or expectations of the contract with Plaintiff. Ms. Bailey insisted on only communicating with her Caucasian counterparts Ms. Saboe and Ms. Cook. Plaintiff's colleagues often informed her via email and in person that Ms. Bailey was inquiring about her. When Plaintiff was notified of Ms. Bailey's actions, she reported them to Muscogee and Ms. Davis-Waters.

46. Upon returning to the office, Plaintiff approached Ms. Bailey to let her know that she had heard she was looking for her and that she was teleworking or in meetings and could now

address her concerns, Ms. Bailey would respond, "Oh, I forgot", or "I don't remember looking for you." Afterwards, Ms. Bailey began physically checking to see if Plaintiff was at her workstation. Plaintiff noticed what Ms. Bailey was doing, and she again reported the issues to Ms. Davis-Waters and Muscogee International, LLC. When Ms. Bailey came to Plaintiff's workstation, Plaintiff would stop working to acknowledge Ms. Bailey, and instead of speaking Ms. Bailey would just stare at Plaintiff without saying anything.

47. Although Plaintiff sent emails regarding the false allegations about the OBO Broadcast Notice to Muscogee, she received no substantive response from Muscogee representatives. Plaintiff scheduled a follow-up meeting with Mr. Turner on September 12, 2018. Plaintiff brought proof to the meeting once again proving she had done nothing wrong and that the OBO Broadcast Notice was indeed completed by her colleague Ms. Alexander when it was assigned in the acceptable timeframe.

48. Plaintiff communicated with Mr. Turner that in her four years of working with OBO HR, she had received numerous accolades for her work from employees within the OBO Division and other State Department employees outside the OBO Division. Plaintiff expressed that due to accusations made against her made by Ms. Bailey, her name was being smeared and Plaintiff felt discriminated against and harassed because Ms. Bailey was creating a hostile work environment.

49. Plaintiff asked Mr. Turner and the other Muscogee representative present in the meeting what should she do to handle the situation. Mr. Turner's response to Plaintiff was "I cannot pull anything out of my hat at the moment." The other Muscogee representative stated that she was new to the company and could not speak on the situation. Mr. Turner told Plaintiff that Karrie Franklin, Muscogee's HR representative would be able to assist with her issue.

50. Plaintiff asserts that Defendant did not provide the requisite support or representation to her as her joint employer. Every time Plaintiff reported discrimination and she was brushed off.

51. On September 27, 2018, Muscogee COO Tyrone Taylor emailed Plaintiff and informed her that she did not have a telework agreement and wanted to know who authorized her telework. Plaintiff's telework had been authorized by her direct supervisor Ms. Davis-Waters. Ms. Davis-Waters informed Mr. Taylor of Plaintiff's authorization to telework in response to his initial email. Plaintiff yet again informed Mr. Taylor that she did have a telework agreement in her HR contract and it did not expire until December 2018.

52. This telework agreement was part of her original contract before her HR contract transferred to Muscogee, International, LLC. The telework agreement was signed and approved by Ms. Davis-Waters and Ms. Saboe.

53. Plaintiff did not hear from Muscogee representatives following the September 27, 2018 email, but Ms. Bailey continued communicating with the Muscogee and not with Plaintiff or the Ms. Davis-Waters.

54. On Monday, November 5, 2018 at 4:00 p.m., Ms. Bailey stopped Plaintiff in the HR office and said, "See me before you depart for the day". Plaintiff informed Ms. Bailey that she was on her way out of the office because it was the end of day for her. Per Ms. Bailey's request, Plaintiff went to Ms. Bailey's workstation, standing on outside of the cubicle. Ms, Bailey got out of her chair, walked out of her cubicle, and grabbed a piece of paper she had tapped to the wall, stating to Plaintiff that every morning and evening she needed to physically come by her cubicle to sign the form hanging on the wall or send her an email with her attendance. Plaintiff replied that she would not sign the piece of paper taped to the

wall because there were ongoing communications with Muscogee and she was waiting for documentation to be provided to her in writing in reference to this very issue. Ms. Bailey responded, "I'm aware of the communications you and Muscogee, International, LLC are having, but you still need to sign this paper." Plaintiff in turn told Ms. Bailey to communicate with her supervisor Ms. Davis-Waters and Muscogee. Plaintiff then walked away.

55. As Plaintiff returned to her desk to gather her belongings to depart for the day, she sent an email to Muscogee informing them of the encounter she had just had with Ms. Bailey.

56. The next business day, on Tuesday, November 6, 2018 Muscogee responded to Plaintiff asking for a telework agreement, and advised that Plaintiff hadn't provided additional sufficient examples of discrimination, harassment, and hostile work environment.

57. On November 8, 2018, Plaintiff addressed Muscogee's concerns, informing them yet again that the Telework agreement they requested was awaiting the signature of Ms. Saboe. It had been delayed because Ms. Saboe was on extended leave and was not returning to the office until November 7, 2018. Plaintiff would provide a status update to them once Ms. Saboe and the Telework team contacted her regarding her follow-up inquiry. However, the active telework agreement for Plaintiff was not set to expire until December 2018. Plaintiff also provided examples to Muscogee regarding the discrimination, harassment, and hostile work environment she experienced at the hands of Ms. Bailey.

58. Plaintiff was never advised by Ms. Bailey, Ms. Davis-Waters, or Muscogee that there were any performance issues with her while working on the contract. On November 15, 2018, Muscogee met with Plaintiff per Ms. Saboe and Ms. Bailey's instructions, terminating her

for a telework agreement that was currently in place, along with a revised agreement that was still awaiting Ms. Saboe's signature.

59. Plaintiff has consistently been the target of race discrimination, hostile work environment, and retaliation.

60. More specifically, the Plaintiff faced continuous and relentless harassment, beginning with the appointment of Sara Bailey as the Contract Office Representative ("COR") for Plaintiff's joint employer Muscogee International, LLC with Defendant the U.S. Department of State, Bureau of Overseas Buildings Operations ("OBO"), Human Resources ("HR") Division. The aforementioned misconduct was so egregious and pervasive that it has affected the Plaintiff's mental, emotional, and physical wellbeing in irreparable ways, culminating in her termination in retaliation of her complaints on November 15, 2018.

61. Other similarly-situated employees outside of Plaintiff's protected class have received more favorable treatment and have not been subjected to termination. This includes:

- Cynthia Saboe (Caucasian, female)

- Celenne Cook (Caucasian, female)

62. After her termination, Plaintiff applied for employment in a Human Resources Specialist position with Defendant. On February 14, 2020, she received a letter informing her that based upon a suitability review, Defendant had made a preliminary decision to terminate her candidacy for the position on the grounds of "misconduct or negligence in employment" due to allegations that she falsified her timesheet, claiming work and overtime for hours she did not work, continued to telework without a telework agreement, and refused to obey a legitimate direction from Ms. Bailey, leading to her termination for

insubordination. Though Defendant reconsidered its decision on June 10, 2020 and determined not to cancel Plaintiff's eligibility for the HR Specialist position following her response to the preliminary decision letter, the harm that Ms. Briscoe's conduct and allegations against Plaintiff has caused is clearly ongoing and significant.

63. Plaintiff was forced to file suit due to Defendant's inability to remedy its unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress.

64. The Defendant's discriminatory and retaliatory practices have been effectuated in violation of Title VII of the Civil Rights Act and the Fair Labor Standards Act ("FLSA").

## COUNT I

### VIOLATION OF TITLE VII – RACE DISCRIMINATION

65. 138. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

66. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

67. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is African American, a woman, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified Human Resources officer, as she has several years of successful experience in a federal position with Defendant. The Plaintiff suffered adverse employment actions directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964 when she was repeatedly discriminated against and

harassed by her Caucasian female supervisor, Ms. Sara Bailey. Ms. Bailey, along with other representatives of Defendant, have subjected Plaintiff to a pattern of discriminatory, disparate treatment that stands in stark contrast to the more favorable treatment received by similarly-situated non-African American employees as asserted above.

68. Plaintiff is a member of a protected class as an African American woman.

69. Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

70. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

71. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

72. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

73. Defendant reprimanded Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her race.

74. Other employees who were similarly situated, but were non-Black or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

75. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

76. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

77. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

78. Further, Defendant's treatment and actions are ongoing.

79. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

80. Similarly, situated non-Black employees were not subjected to the same, similar, or adverse treatment like Plaintiff, and have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

81. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

82. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

83. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

84. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race.

85. Defendant discriminated against Plaintiff because of her race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

86. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

87. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

88. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

89. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

90. Defendant must comply with Title VII, but by and through its conduct, has violated Title VII.

**<u>COUNT II</u>**

**VIOLATION OF TITLE VII –HOSTILE WORK ENVIRONMENT**

91. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

92. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

93. The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment and detrimentally affected Plaintiff.

94. The actions and conduct by the above-described perpetrators as set forth herein were severe and pervasive and based on Plaintiff's race and constituted discrimination based on race.

95. The actions and conduct described herein would have detrimentally affected a reasonable person of the same race in Plaintiff's position.

96. Defendant knew or should have known of the harassment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the harassment.

97. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of harassment; failing to redress the harassment of Plaintiff by Ms. Bailey; by consciously failing to protect Plaintiff from harassment within the Agency; and by punishing Plaintiff for her complaints of harassment by terminating her employment, Defendant exacerbated the hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

98. Defendant's actions, and failure to act, amounted to discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Title VII, through the 1972 amendment 16 known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of federal employees through Section 5 of the Fourteenth Amendment.

99. As a direct result of Defendant's unlawful acts of harassment, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT III

### VIOLATION OF TITLE VII – RETALIATION

100.     Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

101.     Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, id. § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986).

102.     Here, the Plaintiff faced retaliation for the complaints she submitted internally with the Agency, beginning in October 2018 prior to her termination on November 15, 2018. She additionally faced retaliation in her attempts at securing subsequent employment when she was initially rejected for reemployment on February 14, 2020, due to her alleged "Misconduct or negligence in employment."

103.     Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII and the FLSA. She has since suffered further retaliation as a result of her complaint in continuation of the retaliation complained of in her EEOC Charge, extending beyond her termination to her efforts to secure future employment. Such acts not only constituted adverse actions against Plaintiff, but also created a profound chilling effect in which Plaintiff and other similarly situated employees may fear swift retribution for pursuing their cases to the fullest extent.

104.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

105.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

106.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

107.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

108.    Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

109.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

110.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

111.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

112.    Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

113.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

114.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

115.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

116.    Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

117.    Defendant must comply with Title VII, and by and through its conduct, violated the law.

118.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot offer any legitimate reason for its unlawful conduct.

## COUNT IV

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")

119.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

120.     Defendant was an Employer of Plaintiff within the meaning of the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq*. ("FLSA").

121.     Section 15(a)(3) of the FLSA states that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

122.     Plaintiff was terminated on November 15, 2018, following her internal Agency EEO complaints of race and age discrimination.

123.     The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American) and protected activity.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Shawnice Stevens, respectfully prays that this Court grant her the following relief:

a.   Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII and the FLSA;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.  Award back pay and compensatory damages in the amount of $500,000 that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: January 17, 2023

Respectfully submitted,

By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
Bar No. 219016
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite2098
Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com

/s/ Laura Brett Harshbarger
Laura Brett Harshbarger, Esq.
Bar No. 1672682
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C.20003
Tel. (202) 455-8513
Counsel@DistrictLegalGroup.com
*Counsel for Plaintiff Shawnice Stevens*